IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MENDORA DUNN ON BEHALF OF M.D.B, a minor, | ) ) ) | 8:16CV236 |
| Plaintiff, | ) ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration | ) ) ) ) ) | |
| Defendant. | ) ) | |
| | ) | |

Plaintiff claims that her daughter ("Claimant") was entitled to Social Security disability benefits based on asthma, eczema, allergies to peanuts, egg whites, milk, rice, and peas, and a learning disability in math and reading. An administrative law judge ("ALJ") who reviewed the record in this case found the credible evidence showed Claimant may have some limitations of function, but not to the extent of satisfying the requirements for an award of disabled child's benefits. Because the ALJ's articulated reasons in this case are in accordance with the relevant law and evidence, the decision will be affirmed.

*I. NATURE OF ACTION AND PRIOR PROCEEDINGS*

On July 29, 2013, Plaintiff filed an application for supplemental security income (SSI) on behalf of Claimant, a child under age 18 (Filing 11-5, Tr. 126). The Social Security Administration ("SSA") denied the claim initially on September 16, 2013 (Filing 11-3, Tr. 61; Filing 11-4, Tr. 80-83), and upon reconsideration on November 26, 2013 (Filing 11-3, Tr. 70; Filing 11-4, Tr. 84-86, 87-90). Plaintiff then requested a hearing before an ALJ (Filing 11-4, Tr. 91-93), which was held on January 15, 2015 (Filing 11-2, Tr. 36-60).

The ALJ issued a decision denying Claimant's application on February 24, 2015 (Filing 11-2, Tr. 15-31). Plaintiff request for review of the ALJ's decision (Filing 11-2, Tr. 5) was denied by the Appeals Council on April 12, 2016. (Filing 11-2, Tr. 1-3). The ALJ's decision thereby became the final decision of the Commissioner. *See Van Vickle v. Astrue,* 539 F.3d 825, 828 (8th Cir. 2008).

## II. DEFENDANT'S MOTION TO STRIKE

In her brief and subsequent filing (Filing 14, 15), Plaintiff submitted additional evidence which Defendant has moved to strike from the record (Filing 16). The motion will be granted and the extra-record evidence will not be considered in reviewing the ALJ's decision.

The ALJ in this case issued her decision on February 24, 2015, which is the end of the adjudicated period subject to judicial review (Filing 11-2, p. 12). The extra-record documents Plaintiff submitted concern events and medication refills occurring after the end of the adjudicated period, or which do not provide new information that would justify supplementation of the administration record. The documents also are not supported by an affidavit as required by NECivR 7.1(a)(2)(C).

Plaintiff submitted several pages of extra-record evidence (Filing 14, pp. 2-3, 5-13, and Filing 15). This supplemental evidence generally includes notes from the school nurse, records of medications obtained for Plaintiff, general printouts on Asthma and bronchitis, and a listing of Plaintiff's patient history. Some of the documents are undated, but the majority of documents refer to treatment or medications obtained in 2015 or 2016. There are a few entries that occur prior to the ALJ decision, including reports of medications provided on November 20, 2014, for cetirizine and methotrexate (Filing 14, p. 6) and for triamcinolone on August 19, 2014 (Filing 15, p. 3), and a report of a follow up appointment with Dr. Hopp for allergies on January 12, 2015 (Filing 14, p. 12). The remaining documents or appointments occurred after the ALJ decision on February 24, 2015.

When evaluating the correctness of the ALJ's decision, the Court is not at liberty to consider any evidence that is not included in the certified transcript for any reason other than to determine whether the evidence would support a motion to remand under section 205(g) of the Act, 42 U.S.C. § 405(g). *See* 42 U.S.C. § 405(g); *see also Jones v. Callahan,* 122 F.3d 1148, 1154 (8th Cir. 1997); *Delrosa v. Sullivan,* 922 F.2d 480, 483 (8th Cir. 1991). Plaintiff did not submit a supported motion to remand.

A motion to remand must show there is new evidence, which is material and there was good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). The evidence must be new and noncumulative. *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002). It must be relevant and probative in that there is a reasonable possibility it would have changed the Commissioner's decision had it been before her. *Krogmeier v. Barnhart,* 294 F.3d 1019, 1025 (8th Cir. 2002). It must also relate to the time period of which benefits were denied, and not concern evidence of a later acquired disability or of the subsequent deterioration of the previously non disabling condition. *Estes,* 275 F.3d at 725.

Plaintiff must further demonstrate good cause for not having incorporated the new evidence into the administrative record. *Hinchey v. Shalala,* 29 F.3d 428, 432 33 (8th Cir. 1994) (good cause is lacking where claimant could have obtained evidence before administrative record was closed); *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989). Plaintiff cannot meet the "good cause" requirement simply because the evidence was created after the ALJ's decision. Such an argument confuses the "good cause" requirement of 42 U.S.C. § 405(g), with the "new evidence" requirement.

Plaintiff's extra-record evidence does not meet any of the requirements for a remand under sentence six of 42 U.S.C. § 405(g). Moreover, the legislative history of 42 U.S.C. § 405(g) makes clear that the amended provision was enacted to limit the discretion of federal courts to remand for consideration of new evidence. *Melkonyan v. Sullivan,* 501 U.S. 89, 100-101 (1991). The mere fact evidence is of recent origin

-3-

does not require a remand. *See* 42 U.S.C. § 405(g); *Pierre v. Sullivan*, 884 F.2d 799, 803-804 (5th Cir. 1989). The Eighth Circuit Court of Appeals has disfavored claimants' attempts to submit new evidence after an ALJ's decision in an attempt for "another bite of the apple." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995); *Sullins v. Shalala*, 25 F.3d 601, 603 (8th Cir. 1994).

## III. STATEMENT OF ISSUES

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The adjudicated period in this case is between July 29, 2013, the date of Claimant's SSI application, and February 24, 2015, the date of the ALJ's decision. *See* 20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (because SSI benefits are not payable for a period prior to application, the relevant period begins on date of application). Because Claimant is a child under the age of 18, she can only receive disability benefits if her condition meets, medically equals, or functionally equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (*i.e.*, "the Listings") during the adjudicated period.

## IV. STANDARD OF REVIEW

A claimant under the age of 18 shall be considered disabled for the purposes of SSI benefits if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(I). The Supreme Court held the disability, and not only an impairment, has to last for a continuous period of not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212, 218-20 (2002). The ALJ's decision clearly sets-forth the regulatory definitions for determining whether a child is "disabled" within the meaning of the Act (Filing 11-2,

Tr. 16-18). In short, Claimant's impairments must meet or medically equal, or functionally equal, a listed impairment. *See* 20 C.F.R. § 416.924; SSR 09-2p. The requirements to functionally equal are described in 20 C.F.R. § 416.926a(a) as "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. §§ 416.925(b)(ii) and 416.926a(a); SSR 09-2p. The full definitions of the terms "marked" and "extreme" can be found in 20 C.F.R. § 416.926a(e), the Introduction of Social Security Ruling ("SSR") 09-2p, and the ALJ's decision (Filing 11-2, Tr. 16-18).

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Finch*, 547 F.3d at 935.

A court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *see McNamara v. Astrue,* 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## V. DISCUSSION

The ALJ evaluated Claimant's application under the three-step sequential evaluation process for individuals under age 18 (Filing 11-2, Tr. 16). The ALJ found Claimant had not engaged in substantial gainful activity at step one (Filing 11-2, Tr. 18). At step two, she found Claimant's severe impairments included asthma, eczema, allergies to peanuts, egg whites, milk, rice, and peas, and a learning disability in math and reading (Filing 11-2, Tr. 18). At the third step, the ALJ found Claimant did not have an impairment that met or medically equaled an Appendix 1 Listing (Filing 11-2, Tr. 19). The ALJ further determined Claimant did not have an impairment that "functionally equaled" an Appendix 1 Listing because she did not have either "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning (Filing 11-2, Tr. 19, 31). Thus, the ALJ determined that Claimant was not eligible for SSI benefits as a disabled child (Filing 11-2, Tr. 31). Substantial evidence supports these findings.

The six domains of function are: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. The ALJ's decision will be analyzed below with reference to each of these domains.

### A. Acquiring and Using Information.

In the domain of "Acquiring and Using Information," the SSA considers a child's ability to learn, think about, and use the information. *See* SSR 09-3p, Policy Interpretation, General. While there is a wide range of normal development, most children follow a typical course as they grow and mature. *Id.* As is true in many disability cases, there is no doubt Claimant experiences limitations due to her conditions; however, the real issue is the extent of those limitations. *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). Again, a "marked limitation" means the

-6-

child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities (Filing 11-2, Tr. 17); 20 C.F.R. § 416.926a(e)(2).

The ALJ found Claimant's impairment did not "interfere seriously" with her acquiring and using information. *See* 20 C.F.R. § 416.926a(e)(2). The ALJ in the present case noted Claimant's acquiring and using information abilities during the adjudicated period (July 29, 2013 through February 24, 2015) were shown in the questionnaire Claimant's mother completed on August 23, 2013, where she admitted Claimant had no problems communicating or learning, but only had some physical limitations (Filing 11-2, Tr. 25; Filing 11-6, Tr. 139-146). Plaintiff further noted in her answers to prehearing interrogatories completed on September 6, 2014, that Claimant enjoys making pictures and bracelets with beads (Filing 11-2, Tr. 25; Filing 11-6, Tr. 201-205). The record shows Claimant functioned adequately in kindergarten and first grade, but began to exhibit difficulty with reading and math in the second grade (Filing 11-2, Tr. 26; Filing 11-6, Tr. 209-218, 230). At that time, the school established an Individualized Education Plan ("IEP") to provide resource instruction five hours a week in these areas (Filing 11-2, Tr. 26; Filing 11-6, Tr. 232). The teachers indicate in kindergarten and first grade that Claimant made steady progress academically, but needed practice with reading skills and was working below grade level in all areas (Filing 11-2, Tr. 26; Filing 11-6, Tr. 209-218, 230). The school psychologist indicated in the IEP that Claimant's basic reading skills and math reasoning skills were below average (Filing 11-2, Tr. 26; Filing 11-6, 231-232). The current school year report card indicates Claimant was not failing any subjects, although she continued below reading level (Filing 11-2, Tr. 26, Filing 11-6, Tr. 237). Claimant testified she now does well in school with resources to help her with math and reading (Filing 11-2, Tr. 20, 41-42).

The foregoing demonstrates Claimant did not have marked limitations in the domain of acquiring and using information. The ALJ correctly pointed out Claimant has some limitations, but not Listing-level limitations (Filing 11-2, Tr. 25). *Thomas, 928 F.2d at 259*. The ALJ's resolution of the evidence in finding Claimant's

-7-

impairment did not "interfere seriously" with her acquiring and using information ability will be affirmed.

### B. Attending and Completing Tasks.

In the domain of "Attending and Completing Tasks," the SSA considers a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks. *See* SSR 09-4p, Policy Interpretation, General. The SSA considers the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace. *Id.* The SSA also considers the child's ability to change focus after completing a task and to avoid impulsive thinking and acting. *Id.* Finally, the SSA evaluates a child's ability to organize, plan ahead, prioritize competing tasks, and manage time. *Id.* The limitations in the domain of "Attending and Completing Tasks" are most often seen in children with mental disorders. *Id.*

The ALJ found Claimant's impairment did not "interfere seriously" with her attending and completing tasks. *See* 20 C.F.R. § 416.926a(e)(2). The ALJ noted the fact Plaintiff reported in the questionnaire completed on August 23, 2013, that Claimant had no problems paying attention and sticking to a task (Filing 11-2, Tr. 26; Filing 11-6, Tr. 139-146). She also noted in the answers to prehearing interrogatories that Claimant enjoys putting beads together for bracelets and she is responsible for cleaning her own room, but often Plaintiff has to complete this task (Filing 11-2, Tr. 26; Filing 11-6, Tr. 201-205). A kindergarten teacher commented in May 2012 (before the adjudicated period) that Claimant had a short attention span and required constant reminders to stay focused (Filing 11-2, Tr. 27; Filing 11-6, Tr. 218). However, the school psychologist advised during the adjudicated period in January 2014 that, upon her observation of Claimant in the classroom, she was attentive and participated in the discussion (Filing 11-2, Tr. 27; Filing 11-6, Tr. 230). The current school year report card shows satisfactory performance in initiative, cooperation, responsibility, work habits, self-control, and problem solving (Filing 11-2, Tr. 27; Filing 11-6, Tr. 238).

Claimant testified that the tasks she completed at home include washing dishes, making her bed, putting away her clothes, and doing homework (Filing 11-2, Tr. 20, 43-44).

The foregoing demonstrates Claimant did not have marked limitations in the domain of attending and completing tasks. The ALJ correctly pointed out the existence of some limitations, but not Listing-level limitations (Filing 11-2, Tr. 26-27). *Thomas*, 928 F.2d at 259. The ALJ's resolution of the evidence in finding Claimant's impairment did not "interfere seriously" with her attending and completing tasks will be affirmed.

### C. Interacting and Relating with Others.

In the domain of "Interacting and Relating with Others," the SSA considers a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others. *See* SSR 09-5p, Policy Interpretation, General. This domain includes all aspects of social interaction with individuals and groups at home, at school, and in the community. *Id.* Important aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others. *Id.*

The ALJ found Claimant's impairment did not "interfere seriously" with her interacting and relating with others. *See* 20 C.F.R. § 416.926a(e)(2). The ALJ noted Claimant is described throughout the record as cooperative and pleasant (Filing 11-2, Tr. 27; Filing 11-6, Tr. 218). Claimant testified at the hearing that she gets along with her friends and her brother (Filing 11-2, Tr. 27, 43-44). Claimant said she had quite a few friends she played with at home and school (Filing 11-2, Tr. 20, 44). When she injured her knee, she was noted to be singing and laughing with the nurse in the emergency room (Filing 11-2, Tr. 27; Filing 11-7, Tr. 276). The school psychologist observed in January 2014 that Claimant was generally well behaved and tried hard in the classroom and on testing (Filing 11-2, Tr. 27; Filing 11-6, Tr. 230).

The foregoing demonstrates Claimant did not have marked limitations in the domain of interacting and relating with others. The ALJ correctly pointed out the existence of some limitations, but not Listing-level limitations (Filing 11-2, Tr. 27). *Thomas*, 928 F.2d at 259. The ALJ's resolution of the evidence in finding Claimant's impairment did not "interfere seriously" with her interacting and relating with others will be affirmed.

### D. Moving About and Manipulating Objects.

In the domain of "Moving About and Manipulating Objects," the SSA considers a child's physical ability to move one's body from one place to another, and to move and manipulate things. These activities may require gross or fine motor skills, or a combination of both. *See* SSR 09-6p, Policy Interpretation, General.

The ALJ found Claimant's impairment did not "interfere seriously" with her moving about and manipulating objects. *See* 20 C.F.R. § 416.926a(e)(2). The ALJ noted it was reasonable that Claimant's skin condition and reported asthma might affect her ability to move about and manipulate objects (Filing 11-2, Tr. 28). However, Claimant testified at the hearing that she enjoys playing basketball, jumping rope, and playing volleyball at school, and at no time has needed an inhaler or breathing treatment (Filing 11-2, Tr. 20, 28, 44-45). Claimant's chores at home include washing dishes, making her bed, putting away her clothes, and doing homework (Filing 11-2, Tr. 20, 43-44). Claimant's mother advised in her answers to prehearing interrogatories that Claimant enjoys art things such as making pictures and stringing beads for bracelets, which obviously requires good, fine manipulation (Filing 11-2, Tr. 28; Filing 11-6, Tr. 201-205).

The foregoing demonstrates Claimant did not have marked limitations in the domain of moving about and manipulating objects. The ALJ correctly pointed out the existence of some limitations, but not Listing-level limitations (Filing 11-2, Tr. 28). *Thomas*, 928 F.2d at 259. The ALJ's resolution of the evidence in finding Claimant's

impairment did not "interfere seriously" with her moving about and manipulating objects will be affirmed.

###### E. Caring for Yourself.

In the domain of "Caring for Yourself," the SSA considers a child's ability to maintain a healthy emotional and physical state, including how well the child gets her emotional and physical wants and needs met in appropriate ways, how the child copes with stress and changes in the environment, and how well the child takes care of their own health, possessions, and living area. *See* SSR 09-7p, Policy Interpretation, General.

The ALJ found Claimant's impairment did not "interfere seriously" with her caring for herself. *See* 20 C.F.R. § 416.926a(e)(2). The ALJ noted there was no evidence in the record of Claimant exhibiting difficulty in taking care of herself (Filing 11-2, Tr. 29). Claimant's mother indicated that Claimant's grooming was very good (Filing 11-2, Tr. 29; Filing 11-6, Tr. 203). Claimant testified at the hearing that she dresses herself for school and rides the bus (Filing 11-2, Tr. 20, 42). Her chores include washing dishes, making her bed, putting away her clothes, and doing her own homework (Filing 11-2, Tr. 20, 43-44). Claimant's mother simply reported Claimant periodically complains that all clothes make her itchy, which is associated with her eczema (Filing 11-2, Tr. 29, 52).

The foregoing demonstrates Claimant did not have marked limitations in the domain of caring for yourself. The ALJ correctly pointed out the existence of some limitations, but not Listing-level limitations (Filing 11-2, Tr. 29). *Thomas*, 928 F.2d at 259. The ALJ's resolution of the evidence in finding Claimant's impairment did not "interfere seriously" with her caring for herself will be affirmed.

*F. Health and Physical Well-Being.*

In the domain of "Health and Physical Well-Being," the SSA considers the cumulative physical effects of physical and mental impairments and their associated treatments on the child's health and functioning. Unlike the other five domains of functional equivalence (which address a child's abilities), this domain does not address typical development and functioning. Rather, the "Health and Physical Well-Being" domain addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body; that is, the child's health and sense of physical well-being. *See* SSR 09-8p, Policy Interpretation, General.

The ALJ found Claimant's impairment did not "interfere seriously" with her health and physical well-being. *See* 20 C.F.R. § 416.926a(e)(2). The ALJ noted Claimant's most severe problem, eczema, is managed with a regimen of medications and creams at home, but there is no indication this is required at school (Filing 11-2, Tr. 30). The only recommendation Russell Hopp, D.O., had for the school is to use an EpiPen if Claimant has an adverse reaction to any foods that had been positive on testing, including milk, egg whites, peanuts, rice, and peas (Filing 11-2, Tr. 30; Filing 11-8, Tr. 367).[1] There is no report that this has been necessary, and Claimant admitted

---

[1] Dr. Hopp remarked on March 4, 2013, that Claimant "looks spectacular today compared to last time" (Filing 11-2, Tr. 22; Filing 11-7, Tr. 264, 327). At the March 11, 2013 follow-up, Dr. Hopp observed that chronic eczema was not as severe as it had been four weeks earlier and was fairly stable (Filing 11-2, Tr. 22; Filing 11-7, Tr. 262, 325). On April 29, 2013, Dr. Hopp said Claimant's skin "looks marvelous compared to her previous skin issues" (Filing 11-2, Tr. 22; Filing 11-7, Tr. 261). On July 1, 2013, Dr. Hopp noted Claimant had made remarkable improvement and she needed to go swimming twice a week or do a bleach bath once a week to help her skin (Filing 11-2, Tr. 22; Filing 11-7, Tr. 259, 323).

Review of the July 31, 2013 office visit with Dr. Hopp (two days after the start of the adjudicated period in this case) shows Claimant was doing pretty well and was

she could eat most foods at lunch (Filing 11-2, Tr. 20, 30, 46). Claimant said she has not needed to use an inhaler or breathing treatment (Filing 11-2, Tr. 30, 45), but her mother indicated she takes a breathing treatment each morning that lasts 24 hours and controls her symptoms (Filing 11-2, Tr. 30, 49). Claimant reported she does have skin problems, however, she uses special creams "once in a while," and her skin condition is improving (Filing 11-2, Tr. 20, 45).

The foregoing demonstrates Claimant did not have marked limitations in the domain of health and physical well-being. The ALJ correctly pointed out the existence of some limitations, but not Listing-level limitations (Filing 11-2, Tr. 30). *Thomas, 928 F.2d at 259*. The ALJ's resolution of the evidence in finding Claimant's impairment did not "interfere seriously" with her health and physical well-being will be affirmed.

---

"about as stable as she has been since I started seeing her" (Filing 11-2, Tr. 22; Filing 11-7, 258, 322). She was bathing every day and swimming twice a week for her skin treatment regimen and she did not have asthma or food allergies "per se" (Filing 11-2, Tr. 22; Filing 11-7, Tr. 258, 322). Dr. Hopp noted Claimant was still avoiding milk, peanuts, most eggs, and tomatoes, and her eczema was "super stable and not infected" on her current treatment regimen (Filing 11-2, Tr. 23; Filing 11-7, Tr. 316-317). On June 18, 2014, he said Claimant's skin "looks fabulous" (Filing 11-2, Tr. 23; Filing 11-7, Tr. 314). Dr. Hopp said Claimant's skin was the best it had ever been and physical exam was negative with the exception of allergic rhinitis in the nose (Filing 11-2, Tr. 23; Filing 11-7, Tr. 314).

When seen on July 30, 2014, Dr. Hopp noted that Claimant was back for her pre-school visit and that her skin looked stable, although not perfectly normal (Filing 11-2, Tr. 23; Filing 11-7, Tr. 313). He opined she did not have asthma, but she was having to avoid certain foods because of an allergic reaction that might require the use of an EpiPen in an emergency situation; however, Claimant testified at the hearing that she usually eats everything at school except peanuts and tomato sauce (Filing 11-2, Tr. 23, 46; Filing 11-7, Tr. 313).

*VI. Conclusion*

For the reasons explained above, I find the ALJ's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED:

1.      Plaintiff's motion for an order reversing the Commissioner's decision (Filing 14) is denied.

2.      Defendant's motion to strike (Filing 16) is granted, and all evidentiary materials filed by Plaintiff (Filing 14 at pages 2-3, 5-13, and Filing 15) are stricken from the record.

3.      The Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

4.      Judgment will be entered by separate document.

DATED this 18th day of January, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge